IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| **DARRYL R. GREEN,** ) | |
| ) | |
| ) | **CIVIL ACTION NO:** |
| **Plaintiff,** ) | |
| v. ) | **JURY TRIAL DEMANDED** |
| ) | |
| **KLINE CHEVROLET SALES** ) | |
| **CORPORATION** ) | |
| ) | |
| d/b/a  **PRIORITY CHEVROLET** ) | |
| ) | |
| Serve:  R/A   Rebecca S. Colaw ) | |
|             112 West Washington St. ) | |
|             Suffolk, VA 23434-0000 ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## COMPLAINT

Plaintiff, Darryl R. Green ("Green" or "Plaintiff"), by counsel, brings this action against Defendant Kline Chevrolet Sales Corporation d/b/a Priority Chevrolet ("Priority" or "Defendant") alleges as follows:

### THE PARTIES

1. Plaintiff Darryl R. Green is a natural person, and at all times relevant hereto was, a citizen of the Commonwealth of Virginia, residing in the city of Norfolk, Virginia.

2. Defendant is an entity incorporated in the Commonwealth of Virginia.

3. Defendant owns, operates and maintains a Chevrolet dealership in the City of Chesapeake, Virginia under the name "Priority Chevrolet." Upon information and belief, Defendant is part of a larger group of automobile dealerships under common ownership

and control operating throughout the Hampton Roads area as well as elsewhere in Virginia and other states under the "Priority" name.

## JURISDICTION AND VENUE

4. This court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1331 and 42 U.S.C. §2000e-5 . In addition, this Court has supplemental jurisdiction over Plaintiff's state claims under 28 U.S.C. § 1367 because those claims derive from a common nucleus of operative facts.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiff's claims occurred in the Eastern District of Virginia as Defendant: (a) is authorized to conduct business in this District and has intentionally availed itself to the laws within this District; (b) currently does substantial business in this District; and (c) is subject to personal jurisdiction in this District.

## STATEMENT OF FACTS

6. On or about February 24, 2018, Green visited Defendant's dealership located at 1495 South Military Highway, Chesapeake, Virginia for the purpose of having his 2014 Chevrolet Silverado 1500, VIN 3GCPCREH0EG193004 ("original vehicle") serviced.

7. Plaintiff's original vehicle was purchased from Defendant on October 25, 2014 and financed originally through Defendant. Plaintiff's monthly payments on his original vehicle were $918.37 beginning December 9, 2014 and running for 63 months. As of February 24, 2018, Plaintiff was still making monthly payments on the original vehicle.

8. While waiting for his vehicle to be serviced, Plaintiff was approached by a salesperson for Defendant, Don Taylor ("Taylor"). Taylor told Green that he had looked up

the original vehicle's information on Defendant's computer system and noticed that Green had "lots of equity" in the vehicle.

9. Taylor suggested Green consider trading in the original vehicle for a new 2018 Chevrolet Silverado. Taylor told Green "I can have you in one in two hours." Green agreed to look at and eventually trade in his original vehicle for a new 2018 Chevrolet Silverado 1500, VIN 3GCUKREH7JG238794 ("new vehicle").

10. Defendant and Green negotiated as part of the foregoing transaction that Green would transfer ownership of the original vehicle to Defendant, who would, as a condition of assuming ownership, satisfy the debt owing on the original vehicle by paying off the lender, Port Alliance Federal Credit Union ("Port Alliance"), in the approximate amount of $21,000.00 still due and owing at that time.

11. Defendant gave Green a trade-in value of $21,000.00 for his original vehicle. Defendant then subtracted the specific remainder still owed on the original vehicle, $20,842.35, leaving Green a credit of $157.65. Defendant then provided Green a "Consumer Rebate" of $5,000.00. Thus, Defendant ultimately provided Green a trade-in value of $5,157.65 for his original vehicle. Defendant then purported to assist Green in financing the purchase of the new vehicle, which assistance Green relied upon in making the decision to trade in the original vehicle for the new vehicle.

12. Defendant specifically informed Green that he had received "credit approval" from two banks, which representations Green relied upon in good faith. Green completed all the necessary paperwork for Defendant to complete the financing of the new vehicle. Defendant specifically told Green that the bank that had financed his original vehicle, Port Alliance, had approved financing Green's purchase of the new vehicle. The foregoing

representation was material to the purchase of the new vehicle by Green and was relied upon by Green.

13. Defendant signed multiple documents as part of the purchase of the new vehicle. One document titled "Retail Installment Sale Contract" ("RISC") provided Green with details relating to the financing of the new vehicle. The RISC specifically stated that Green was financing the vehicle under the following "Federal Truth-in-Lending Disclosures" terms: (i) Annual Percentage Rate: 12.10%; (ii) Finance Charge: $22,955.16; (iii) Amount Financed: $46,400.28; (iv) Total of Payments: $69,355.44; and (v) Total Sale Price: "$74,513.09". Both Defendant and Green signed the RISC. (A true and accurate copy of the RISC is attached hereto, made a part hereof, and labeled Exhibit "A".)

14. Green drove off Defendant's lot on February 24, 2018 in the new vehicle relying on Defendant's promise to get him financing for the purchase of the new vehicle and with the good faith understanding based upon Defendant's representations that he had been approved for and had received financing. At the same time, Defendant retained possession over Green's original vehicle.

15. A few days later, Defendant contacted Green and asked that he return to the lot and execute a new contract for financing because Port Alliance did not, in fact, approve the financing of the new vehicle. Defendant then told Green that both Wells Fargo and GM Financial had approved financing for Green's purchase of the new vehicle.

16. Green returned to Defendant's dealership and, at the direction of Defendant's Financial Manager, Brandon Jackson ("Jackson"), voided what Defendant called the Port Alliance contract, the RISC attached as Exhibit A. Brooks then directed Green to sign a new financing document.

17. On or about April 27, 2018, Jackson called Green and informed him that Defendant had attempted but failed to obtain financing with multiple prospective lenders for the new vehicle, despite having previously represented that it had obtained financing on his behalf and despite Plaintiff's good faith reliance upon such representations. Accordingly, Defendant told Green that he would have to return the new vehicle to Defendant.

18. Green returned the new vehicle and Defendant accepted receipt thereof. Green then asked for the return of his original vehicle. Defendant's representative then told Green that Defendant had sold Green's original vehicle. When the Defendant converted and sold Green's original vehicle it had an estimated fair market value of $21,000.00.

19. Defendant did not provide Green with a timely written statement regarding the dealership's action on his application for credit or with a written statement of the reasons why Defendant denied an extension of credit or, alternatively, why he was revoked an extension of credit.

20. Upon information and belief, Defendant obtained Green's consumer report (commonly known as a "credit report") from one or more consumer reporting agencies and evaluated and assessed the report in connection with the transaction.

21. Upon information and belief, one or more of Defendant's employees reviewed and used Green's consumer report(s).

22. Green to his detriment relied upon the financial disclosures made by Defendant in the RISC. The unlawful acts of Defendant caused Green to suffer substantial, actual damages.

23.     Defendant told Green that he would have to accept a used vehicle (loaned vehicle) as a "loaner" for his everyday travels while Defendant "worked on solving" the sale of the original vehicle.

24.     Upon information and belief, Defendant did not have title to Green's original vehicle at the time it sold the vehicle.

25.     After returning the new vehicle, Green contacted Port Alliance to inquire into Defendant's assertions that they could not get Green financing from Port Alliance.  Port Alliance informed Green that it had no record of any contacts from Defendant relating to Green or his financing of the new vehicle, despite Defendant's representations to the contrary.

26.     From February 2018 through May, 2018, Green continued to make payments to Port Alliance on his original vehicle, despite no longer possessing the vehicle, upon penalty of potential default on his loan obligation.

27.     Defendant did not contact Green after April 2018.  Green had no contact whatsoever with Defendant until November 2018.

28.     On October 22, 2018, Green was involved in a minor car accident near the Downtown Tunnel in Norfolk, Virginia while driving the loaned vehicle.  Another vehicle attempted to merge in front of Green and accidentally struck Green's loaned vehicle.  State Police were notified of the accident.

29.     Upon arrival at the scene of the accident a State Trooper, D.L. Carwile, Trooper 1691, (the "Trooper") ran the plates on Green's loaned vehicle.  The Trooper then notified Green that the loaned vehicle had been called in as stolen by Defendant.  The Trooper then hand-cuffed Green and placed him in the back of his police vehicle.  Green told the Trooper what

had happened and why he was in possession of the loaned vehicle. At no time prior to the accident had Defendant requested that Plaintiff return the loaned vehicle.

30. For approximately three hours Green sat hand-cuffed in the Trooper's vehicle as the Trooper made phone calls inquiring into the status of the loaned vehicle. The Trooper called Defendant and spoke with Jackson. Jackson affirmed that Green had been loaned the vehicle and accordingly Jackson did not wish to press charges against Green. The Trooper then spoke with Defendant's Director of Finance, John Mason. Mason told the Trooper that Green must have concocted a scheme to illegally obtain the vehicle with a former employee of Defendant. Mason told the Trooper he was not sure if Green must have "been working with" an employee of Defendant that had recently left Defendant's employment.

31. The Trooper ultimately disbelieved Mason's statement and did not press charges against Green relating to the alleged stolen loaned vehicle. Shortly thereafter, Green returned the loaned vehicle to Defendant. Defendant has not returned Green's original vehicle nor provided him an alternative vehicle.

## COUNT I
### Truth in Lending Act (TILA)

32. Plaintiff repeats and realleges each and every Paragraph of this Complaint as though fully set forth herein.

33. The TILA required defendants as creditor to disclose as the "amount financed" the amount of credit of which Plaintiff as debtor had actual use. The TILA defines "credit" as "the right granted by a creditor to a debtor to defer payments of debt or to incur debt and defer its payment." The retail installment sales contract stated a specific "amount financed" in connection with the transaction between defendants and Plaintiff.

34.     The TILA defines "creditor" as the "person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness." 15 U.S.C. § 1602(f)(2).  In this case, the RISC was executed by Green.  Thus, Green was the creditor in the transaction.

35.     Defendant violated the TILA in its transaction with Green because the RISC signed by Plaintiff, and upon which Plaintiff made his down-payment, had granted Plaintiff on specified terms as stated in the TILA disclosures contained thereon, when that information was false, inaccurate and misleading because the credit granted by Defendants in the transaction actually was illusory and (at least according to Defendants) conditioned upon Defendants' ability to sell RISC to a third party finance company.  Thus, Plaintiff never had actual use of the credit as represented by Defendants in the TILA disclosures contained in the retail installment sales contract.

36.     Defendants violated the TILA by failing to comply with the disclosure requirements of 15 U.S.C. §§ 226.17 and 226.18.

WHEREFORE, plaintiff seeks judgment against Defendants for:

(a)     A declaratory judgment that Defendants have violated the TILA;

(b)     Actual damages pursuant to 15 U.S.C. § 1640(a)(1);

(c)     Statutory damages pursuant to 15 U.S.C. § 1640(a)(2);

(d)     Costs of this action, together with a reasonable attorneys' fees, pursuant to 15 U.S.C. § 1640(a)(3); and,

(e)     Such further relief as the Court deems appropriate.

## COUNT II
Equal Credit Opportunity Act (ECOA)

37. Plaintiff repeats and realleges each and every Paragraph of this Complaint as though fully set forth herein.

38. Plaintiff is an "applicant" as the term is defined in the ECOA, 15 U.S.C. § 1691(a)(b);

39. Defendants are "creditors" as the term is defined in the ECOA, 15 U.S.C. § 1691(a)(e); .

40. Plaintiff completed a credit application and applied to Defendants for credit in connection with the purchase of the new vehicle from Defendants.

41. Defendants denied Plaintiff credit and/or revoked Plaintiff's credit, which denial and/or revocation constituted "adverse action" as the phrase is defined in the ECOA, 15 U.S.C. § 1691(d)(6).

42. Defendants failed to provide the Plaintiff with a proper notice of adverse action as required by the ECOA, 15 U.S.C. § 1691(d);

WHEREFORE, plaintiff seeks judgment against Defendants for:

(a) A declaratory judgment that Defendants have violated the ECOA, 15 U.S.C. § 1691(e)(c) ;

(b) Actual damages pursuant to 15 U.S.C. § 1691(e)(a);

(c) Punitive damages in an amount not to exceed $10,000 pursuant to 15 U.S.C. § 1691(e)(b);

(d) Costs of this action, together with a reasonable attorneys' fees, pursuant to 15 U.S.C. § 1691(e)(d); and,

(e) Such further relief as the Court deems appropriate.

## COUNT III
Fair Credit Reporting Act (FCRA)

43. Plaintiff repeats and realleges each and every Paragraph of this Complaint as though fully set forth herein.

44. Plaintiff is a "consumer" as the term is defined in the FCRA, 15 U.S.C. §1681(a)(c).

45. Defendant is a "person" as the term is defined in the FCRA, 15 U.S.C. §1681(a)(b).

46. Defendant took "adverse action" as the phrase is defined in the FCRA, 15 U.S.C. §1681(a)(k), with respect to Plaintiff, based in whole or in part on information contained in a consumer report.

47. Defendant willfully failed to provide Plaintiff with a proper notice of adverse action as required by the FCRA, 15 U.S.C. §1681(m), thereby violating 15 U.S.C. §1681(n). In the alternative, Defendant negligently failed to provide plaintiff with a notice of adverse action as required by the FCRA, 15 U.S.C. §1681(m), thereby violating 15 U.S.C. §1681(o).

WHEREFORE, plaintiff seeks judgment against Defendants for:

(a) A declaratory judgment that Defendants have violated the FCRA;

(b) Actual damages pursuant to 15 U.S.C. § 1681(n)(a)(1) and/or §1681(o)(a)(1);

(c) Statutory damages pursuant to 15 U.S.C. § 1681(n)(a)(1);

(d) Punitive damages in an amount not to exceed $10,000, pursuant to 155 U.S.C. §1681(n)(a)(2);

(e) Costs of this action, together with a reasonable attorneys' fees, pursuant to 15 U.S.C. § 1681(a)(3) and/or § 1681(o)(a)(2); and,

(f) Such further relief as the Court deems appropriate.

## COUNT IV
Virginia Consumer Protection Act (VCPA)

48. Plaintiff repeats and realleges each and every Paragraph of this Complaint as though fully set forth herein.

49. Defendant is a "supplier" as defined by Va. Code § 59.1-198.

50. The work Defendant performed by Defendant constitutes a "consumer transaction" as defined by Va. Code § 59.1-198.

51. Defendant willfully engaged in the following prohibited acts with regard to the consumer transaction described herein:

   a. misrepresenting the goods were to be provided and were of a particular standard, quality or grade under Va. Code § 59.1-200(A)(6);

   b. misrepresenting the source, sponsorship or approval of the services under Va. Code § 59.1-200 (A) (2);

   c. misrepresenting that the affiliation, connection or association of the supplier of goods or services under Va. Code § 59.1-200 (A) (3); and

   d. using other deception, fraud, false pretense, false promise, or misrepresentation in connection with the consumer transaction under Va. Code § 59.1-200

   e. other violations of Va. Code § 59.1-200(A)

52. To the extent Defendant's violation(s) were willful, Plaintiff is entitled to an award of three times their actual damages, plus attorneys' fees and court costs under Va. Code § 59.1-204(A).

53. Alternatively, Plaintiff is entitled to an award of their actual damages, plus attorneys' fees and court costs under Va. Code § 59.1-204 (A).

WHEREFORE, plaintiff seeks judgment against Defendants for:

(a) A declaratory judgment that Defendants have violated the VCPA;

(b) Actual damages or $500, whichever is greater;

(c) To the extent Defendant's violation(s) were willful, Plaintiff is entitled to an award of three times his actual damages, plus attorneys' fees and court costs under Va. Code § 59.1-204(A).

(d) Costs of this action, together with a reasonable attorneys' fees, pursuant to Va. Code § 59.1-204(A); and,

(e) Such further relief as the Court deems appropriate.

## COUNT V
### Common Law Unjust Enrichment

54. Plaintiff repeats and realleges each and every Paragraph of this Complaint as though fully set forth herein.

55. As a result of the conduct described above, Defendant has been unjustly enriched at the expense of Plaintiff.

56. Defendant should be required to disgorge all monies, profits and gains which it has obtained or will unjustly obtain in the future at the expense of Plaintiff.

WHEREFORE, plaintiff seeks judgment against Defendants for:

(a) Actual damages;

(b) Costs of this action, together with a reasonable attorneys' fees, pursuant to Va. Code § 59.1-204(A); and,

(c) Such further relief as the Court deems appropriate.

## COUNT VI
## Common Law Conversion

57. Plaintiff repeats and realleges each and every Paragraph of this Complaint as though fully set forth herein.

58. Plaintiff was the owner of the original vehicle.

59. Defendant has taken Plaintiff's property (*i.e.*, original vehicle) belonging to Plaintiff, and converted the same to its own use, and has refused to return the property to Plaintiff.

60. Defendants' unlawful misappropriation has damaged Plaintiff in an amount exceeding $21,0000.

WHEREFORE, plaintiff seeks judgment against Defendants for:

    (a)    Actual damages;

    (b)    Costs of this action, together with a reasonable attorneys' fees, pursuant to Va. Code § 59.1-204(A); and,

    (c)    Such further relief as the Court deems appropriate.

## COUNT VII
## Intentional Infliction of Emotional Distress

61. Plaintiff repeats and realleges each and every Paragraph of this Complaint as though fully set forth herein.

62. Defendant and its employees and/or agents intentionally caused severe emotional distress to Plaintiff by their willful, wanton, extremely reckless and indifferent conduct, including but not limited to enticing Plaintiff into purchasing a new vehicle and "selling" his original vehicle, providing him multiple mixed/false messages then summarily recalling the new vehicle, providing Plaintiff a loaner vehicle, then calling the loaner vehicle

stolen and then alleging Plaintiff was involved in a scheme with another to steal the loaner vehicle in an effort to have him arrested and charged with theft.

63. The actions of Defendant and its agents go well beyond all bounds of decency and were done with the purpose of inflicting emotional distress and fear.

64. The aforesaid actions by Defendants and its agents was outrageous and were so extreme in degree that a reasonable member of the Hampton Roads community would regard such conduct as atrocious, going beyond all possible bounds of decency and as being utterly intolerable in a civilized community.

65. As a direct and proximate result of Defendant's reckless and indifferent conduct, Green suffered severe pain, emotional distress, mental anguish and physical injuries.

COUNT VIII
Negligent Infliction of Emotional Distress

66. Plaintiff repeats and realleges each and every Paragraph of this Complaint as though fully set forth herein.

67. Defendant negligently caused severe emotional distress to Green by its extremely negligent actions and breach of duty of care, including but not limited to engaging in and/or allowing its employees and agents to engage harass and damage Green – providing him multiple mixed/false messages then summarily recalling the new vehicle, providing Plaintiff a loaner vehicle, then calling the loaner vehicle stolen and then alleging Plaintiff was involved in a scheme with another to steal the loaner vehicle in an effort to have him arrested and charged with theft. .

68. As a direct and proximate result of Defendant's negligent reckless and indifferent conduct and the conduct of their agents, Green suffered severe pain, emotional distress, and mental anguish.

## COUNT IX
### Fraud and Constructive Fraud

69. Plaintiff repeats and realleges each and every Paragraph of this Complaint as though fully set forth herein.

70. Defendant intentionally, knowingly, negligently or innocently misrepresented to Plaintiff the terms and conditions of Plaintiff's selling of his original vehicle and purchasing of the new vehicle in order to induce him to sell and purchased these respective vehicles.

71. Defendant deceived Plaintiff with the abovementioned misrepresentations. Plaintiff did in fact rely on Defendant's misrepresentations to his detriment and as a result was damaged economically and emotionally.

72. At the time the Defendants made the foregoing misrepresentations and promises to Plaintiff, it had no intention of carrying out such representations or promises.

73. As a direct and proximate result of Defendant's intentional and/or negligent and/or reckless and indifferent conduct and the conduct of their agents, Green suffered severe pain, emotional distress, and mental anguish.

## JURY DEMAND

Plaintiff demands a jury trial.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Darryl R. Green, prays for entry of judgment in favor of Plaintiff and against Defendant Kline Chevrolet Sales Corporation d/b/a Priority Chevrolet in the form of the following relief:

a. Declaring that Defendant failed to provide consideration for any and/or all agreements entered into – whether oral or written – between Defendant and Plaintiff and thus all such agreements are void;

b. Compensatory Damages;

c. Punitive Damages;

d. Attorneys' fees and court costs associated with this suit; and

e. Pre- and post-judgment interest on the foregoing damages;

f. Equitable relief as appropriate pursuant to applicable law; and

g. Other such relief as may be appropriate to effectuate the purpose of justice.

Date: March 18, 2019                    Respectfully submitted,

                                        DARRYL R. GREEN

                                        _____/s/_____
                                        Todd M. Gaynor, Esquire
                                        Virginia Bar No.: 47742
                                        GAYNOR LAW CENTER, P.C.
                                        440 Monticello Avenue, Suite 1800
                                        Norfolk, Virginia 23510
                                        PH: (757) 828-3739
                                        FX: (757) 257-3674
                                        EM: tgaynor@gaynorlawcenter.com

                                        Steven B. Wiley (VSB No. 47531)
                                        WILEY LAW OFFICES, PLLC
                                        440 Monticello Ave., Suite 1817
                                        Norfolk, Virginia 23510
                                        757-955-8455

757-319-4089 facsimile
swiley@wileylawoffices.com


*Counsel for Plaintiff*