UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | | |
|---|---|---|
| DARRYL R. GREEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No.:  2:19-cv-00127-MSD-LRL |
| KLINE CHEVROLET SALES | ) | |
| CORP. d/b/a PRIORITY | ) | |
| CHEVROLET, | ) | |
| | ) | |
| Defendant | ) | |

## MEMORANDUM IN SUPPORT OF MOTION TO COMPEL ARBITRATION

Defendant Kline Chevrolet Sales Corp. d/b/a Priority Chevrolet ("Priority")
files this memorandum in support of its motion to compel arbitration of this matter
pursuant to a valid and enforceable arbitration clause to which both parties agreed.
The arbitration clause provides that any question as to arbitrability of the dispute
should be determined by the arbitrator.  Accordingly, and as explained in further
detail below, Priority requests that the Court refer this matter to arbitration and
either dismiss the case from its docket or stay the case until the arbitrator
determines questions of arbitrability.

## RELEVANT FACTS AND ALLEGATIONS

This case involves Plaintiff Darryl Green's grievances over a transaction he
entered into with Priority through which he attempted to purchase a new Chevy
Silverado and trade in his older Silverado.  *See generally* Dkt. 1.  That transaction

was memorialized in "multiple documents," *id.* ¶13, including in the Buyer's Order that Priority and Green entered into on February 24, 2018.  *See* Exhibit A.[1]

Just above Green's signature line on that document is a mandatory ADR provision.  *Id.* at 2.  First, the provision states that "should any "Dispute (as defined below) arise between the Parties, the Parties will first attempt to resolve the Dispute through nonbinding mediation conducted by a neutral third party prior to instituting any other legal action."  *Id.* at 1.  The Buyer's Order then goes on to state that the parties "agree that if any Dispute (as defined below) arises, the Dispute will be resolved by binding arbitration by a single arbitrator under the applicable rules of the alternative dispute resolution agency named here, with that arbitrator tendering a written decision with separate findings of fact and conclusions of law."  *Id.* at 2.  It also states that "[t]his Arbitration Agreement will survive payment of Purchaser(s)' obligations in connection with this transaction and any termination, cancellation or performance of the transaction between Purchaser(s) and Dealer."  *Id.*

The Buyer's Order defines a "Dispute" as (1) "any question as to whether something must be arbitrated" or (2) "any allegations concerning a violation of state or federal statute that may be the subject of binding arbitration, any purely monetary claim greater than $1,000.00 in the aggregate whether contract, tort, or

---

[1] "On a motion to compel arbitration a court may consider external evidence."  *Hughes v. Med. Depot. Inc.*, 2019 U.S. Dist. LEXIS 69631, at *9 (D. S.C. Apr. 23, 2019) (citing *Quality Plus Servs., Inc. v. AGY Aiken LLC*, 2017 U.S. Dist. LEXIS 88497, at *1 (E.D. Va. 2017) ("Because an arbitration clause functions as a specialized kind of forum-selection clause…the Court will consider evidence outside the pleadings on the Motion to Compel Arbitration.")).

other, arising from the negotiation of and terms of the Buyer's Order, any service contract or insurance product, or any retail installment sale contract." *Id.* Thus, disagreements regarding arbitrability must be arbitrated.

As alleged in the Complaint, Green could not secure financing for the purchase of the new Silverado. Dkt. 1, ¶¶ 12-27. While Priority was working to get him financing, it sold the older Silverado that he had traded in. *Id.* ¶ 18. Green alleges that he was provided a loaner, which he drove for approximately eight months before he was involved in a traffic accident in the vehicle and briefly detained in a cruiser while the state trooper checked with Priority. Priority had previously reported the vehicle as stolen during the summer but when the trooper called, after verification, decided not to press charges a few hours later. *Id.* ¶¶ 23, 28-31.[2]

As a result of the events leading up to the attempted transaction on February 24, and the subsequent events arising from that transaction including the parties' attempts to secure financing and the brief detainer of Green in the cruiser, Green has brought a nine-count federal complaint alleging claims under various federal statutes and state tort law. *See* Dkt. 1.

---

[2] Priority recognizes that, at this stage of the litigation, the Court is limited to the allegations in Green's complaint and the transaction documents, including the Buyer's Order that contains the arbitration clause. Suffice it to say, however, that Priority will introduce evidence showing the falsity of many of Green's allegations, including evidence that Green consented to the sale of his trade-in even while the new vehicle purchase was pending, and evidence that Green never attempted to return the loaner car to Priority but instead drove it for free for eight months without authorization or the required paperwork (which is what led the state trooper to detain him).

## **ARGUMENT**

This dispute does not belong in federal court.  The Federal Arbitration Act (FAA) is the product of a "clear federal directive in support of arbitration." *Hightower v. GMRI, Inc.*, 272 F.3d 239, 242 (4th Cir. 2001).  And a court's decision on a motion to compel arbitration must be "guided by the strong federal policy favoring arbitrability."  *Cara's Notions v. Hallmark Cards*, 140 F.3d 566, 571 (4th Cir. 1998).  To that end, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

Green's claims must be sent to arbitration because the Buyer's Order requires it.  The Buyer's Order states that all disputes arising from the negotiation and terms of the Buyer's Order are arbitrable, and any question as to arbitrability must be decided by an arbitrator. Exhibit A at 2.  The Supreme Court has been crystal clear that courts must defer to an arbitration provision that provides that an arbitrator shall determine the threshold question of arbitrability:  "When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract.  In those circumstances, a court possesses no power to decide the arbitrability issue." *Schein, Inv. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019).

This recent precedent could not be more straightforward and has already been the basis for the decision of several district courts in this circuit to grant motions to compel arbitration.  *See, e.g.*, *Spotswood v. Hertz Corp.*, 2019 U.S. Dist.

LEXIS 20536, at *31 (D. Md. 2019) ("The arbitration provisions, however, explicitly reserves for the arbitrator all decisions concerning arbitrability and the scope of the arbitration agreement. These provisions divest this Court of its power to determine the threshold issue of arbitrability."); *Harris v. Equifax Info. Servs.*, 2019 U.S. Dist. LEXIS 65439, at *12 (S.D. W. Va. 2019) ("Further, to the extent that Plaintiffs argue that their claims are not covered by the Arbitration Agreement, that is also for the arbitrator to decide . . . .").

The same reasoning applies here.  Because the Buyer's Order states that an arbitrator, not the Court, must answer "any question as to whether something must be arbitrated," Exhibit A at 2, this matter should be referred to arbitration.  Priority understands that Green will contest whether his claims are arbitrable.  Ultimately, Green's claims should remain in arbitration because they arise from the negotiation and terms of the Buyer's Order and related contracts that he signed on February 24, 2018.[3]  But that is an issue for the arbitrator to decide.

Priority anticipates Green will make a couple arguments in opposition to arbitration.  First, Green may argue that the Buyer's Order is somehow inapplicable or unenforceable.  But the Supreme Court has stated that "unless the

---

[3] Green's allegations regarding the transaction he entered into on February 24, 2018, the trade-in value of his existing car, the process Priority undertook to secure Green credit to purchase his vehicle, and the "multiple documents" Green alleges he signed all flow from that singular act of signing the Buyer's Order.  Each Count references or relies on the attempted but ultimately uncompleted vehicle sale and trade-in transaction as a basis for recovery.  *See, e.g.*, Dkt. 1 at ¶¶33-35; 40; 44-46; 50-51; 55-56; 58-59; 62; 67; 70.  As a result, his claims arise out of that contract, and pursuant to its plain terms, Green's claims must be arbitrated.

challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46 (2006).  Here, there are no allegations in Green's complaint, nor could there be, that the arbitration clause of the Buyer's Order is somehow invalid while the rest of the contract is valid.  And Green acknowledges the validity of the Buyer's Order by referencing that he "signed multiple documents as part of the purchase of the new vehicle."  Compl. ¶13.  While Green does not mention the Buyer's Order by name, he refers to the alleged Retail Installment Sale Contract, which is explicitly covered by and incorporated into the arbitration clause in the Buyer's Order.  *See* Exhibit A at 2.

Next, Green may argue that certain of his claims do not arise from the Buyer's Order.  This argument, while wrong, is irrelevant in the face of the plain language in the Buyer's Order that the threshold question of arbitrability must be decided in arbitration.  Exhibit A at 2.

Finally, Green may contend that the arbitration clause does not apply because the parties never completed the sale of the new truck to Green.  But the Buyer's Order is a valid and binding contract whether or not the sale was completed and expressly includes the parties' obligations in the event the sale is terminated because the buyer cannot get financing.  *See, e.g.*, Exhibit A at 2 ("This Arbitration Agreement will survive payment of Purchaser(s)' obligations in connection with this transaction and any termination, cancellation or performance of the transaction between Purchaser(s) and Dealer."); *id.* at 1 ("Your vehicle purchase depends on the

finance provider's approval of your proposed retail installment sales contract. . . . If your retail installment sales contract is not approved the dealer will notify you verbally or in writing.  You can then decide to pay for the vehicle in some other way or you or the dealer can cancel your purchase.  If the sale is cancelled, you need to return the vehicle to the dealer within 24 hours . . . .").  Therefore, the cancellation of the sale does not free Green from the arbitration requirement set forth in the Buyer's Order.

## **CONCLUSION**

For the reasons stated above, Priority respectfully requests that the Court grant its motion to compel arbitration and remove this case from its docket or, in the alternative, stay this matter pending arbitration.


Dated:  May 15, 2019                          Respectfully submitted,


By: /s/ J. Benjamin Rottenborn

J. Benjamin Rottenborn (VSB No. 84796)
Justin E. Simmons (VSB No. 77319)
WOODS ROGERS PLC
P.O. Box 14125
Roanoke, VA 24038-4125
Phone: (540) 983-7600
Fax: (540) 983-7711
brottenborn@woodsrogers.com
jsimmons@woodsrogers.com

Rebecca S. Colaw (VSB No. 47702)
General Counsel
Priority Auto Group, Inc.
112 West Washington Street, Suite 505
Suffolk, VA 23434
Phone:  (757) 539-5020
Fax:  (757) 539-5743
Rebecca.colaw@priorityauto.com

*Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 15, 2019, I caused to be served a copy of the

foregoing document upon all counsel of record via the CM/ECF system for the

United States District Court for the Eastern District of Virginia.

*/s/ J. Benjamin Rottenborn*

J. Benjamin Rottenborn (VSB No. 84796)
Justin E. Simmons (VSB No. 77319)
WOODS ROGERS PLC
P.O. Box 14125
Roanoke, VA 24038-4125
Phone: (540) 983-7600
Fax: (540) 983-7711
brottenborn@woodsrogers.com
jsimmons@woodsrogers.com