UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

DARRYL R. GREEN,

        Plaintiff,

v.                           Civil No. 2:19cv127

KLINE CHEVROLET SALES CORPORATION,
*doing business as* PRIORITY CHEVROLET

        Defendant.

## OPINION AND ORDER

This matter is before the Court on a motion to compel arbitration filed by defendant Kline Chevrolet Sales Corporation, doing business as Priority Chevrolet ("Defendant" or "Priority"). ECF No. 11. For the reasons set forth below, the motion is **GRANTED**.

### I. FACTUAL AND PROCEDURAL HISTORY[1]

Defendant operates a Chevrolet dealership in Chesapeake, Virginia. Compl., ECF No. 1 ¶¶ 2-3. On February 24, 2018, Plaintiff Darryl R. Green ("Plaintiff" or "Green") visited Defendant's dealership to have his vehicle, a 2014 Chevrolet

---

[1] The following facts, which are not disputed at this time, are drawn from the Complaint. ECF No. 1. The parties have also each submitted evidence outside the pleadings in support of their respective positions on the motion to compel arbitration. Neither party challenges the opposing party's submission of such evidence, nor does either party suggest that is it improper for the Court to consider the evidentiary submissions. Accordingly, the Court considers such unopposed submissions, noting that such exhibits are proper under (1) Rule 12(b)(1), as a motion to compel arbitration is an attack on the plaintiff's jurisdictional allegations, (2) after converting Defendant's motion into a motion for summary judgment pursuant to Rule 12(d), or (3) under the Federal Arbitration Act, which involves application of a standard similar to summary judgment. Artis v. Lyon Shipyard, Inc., No. 2:17CV595, 2018 WL 2013073, at *1, n.2 (E.D. Va. Apr. 26, 2018).

1

Silverado, serviced. Id. ¶ 6. One of Defendant's salesmen approached Plaintiff at the dealership and persuaded Plaintiff to trade in his 2014 vehicle for a new 2018 Chevrolet Silverado. Id. ¶¶ 8-14. Defendant, through the salesman, represented to Plaintiff that if he transferred ownership of the 2014 vehicle to Defendant, it would pay off the remaining balance Plaintiff owed on the 2014 vehicle. Id. ¶¶ 10-11. Further, Defendant represented to Plaintiff that Defendant would assist Plaintiff in obtaining financing for the new truck, and then informed Plaintiff that he had received credit approval from two banks including Port Alliance, Plaintiff's prior lender. Id. ¶¶ 11-12.

In reliance on these representations, Plaintiff "signed multiple documents" as part of the purchase. Id. ¶¶ 12-13. Among the documents signed, is a "Buyer's Order." The Buyer's Order contains the following clauses ("arbitration provision"):

> **AGREEMENT TO ARBITRATE DISPUTES:** Purchaser(s) and Dealer agree that if any Dispute (as defined below) arises, the Dispute will be resolved by binding arbitration by a single arbitrator under the applicable rules of the alternative dispute resolution agency named here, with that arbitrator rendering a written decision with separate findings of fact and conclusions of law. An award by the arbitrator shall be final and binding on all parties to the proceeding. The arbitrator shall apply the substantive law of the Commonwealth of Virginia and the arbitration shall take place in the locality in which Dealer is located. All arbitration costs and expenses shall be borne as determined by the arbitrator. Judgment on an award must be entered by either party in the highest local, state, or federal court, or before any administrative body. If any portion of this agreement is found to be unenforceable, the

remainder of the agreement shall remain effective. The Arbitration Agreement will survive payment of Purchaser(s)' obligations in connection with this transaction and any termination, cancellation or performance of the transaction between Purchaser(s) and Dealer.

**DISPUTE DEFINED:** A Dispute is any question as to whether something must be arbitrated, as well as any allegation concerning a violation of state or federal statute that may be the subject of binding arbitration, any purely monetary claim greater than $1,000.00 in the aggregate . . . provided, however, that your failure to provide consideration to be paid by you . . . as well as our right to retake possession of the vehicle pursuant to this Buyer's Order shall not be considered a dispute and shall not be subject to arbitration.

ECF No. 13 at 3.

Plaintiff then drove off in the new truck with the understanding that he had received financing and successfully purchased the 2018 truck. ECF No. 1 at ¶ 14. A few days later, Defendant contacted Plaintiff and asked Plaintiff to return to its dealership to execute a new financing agreement because Port Alliance had not actually approved financing; Plaintiff then returned to the dealership. Id. ¶¶ 15-16. Thereafter, Defendant represented to Plaintiff that he had been approved for financing by both Wells Fargo and GM Financial. Id. ¶ 15.

On April 27, 2018, Defendant again contacted Plaintiff and advised him that it had failed to obtain financing for Plaintiff, despite its prior representations. Id. ¶ 17. Defendant advised Plaintiff that he would have to return the 2018 truck, which Plaintiff did. Id. ¶¶ 17-18. Plaintiff then asked for his 2014

3

vehicle back; however, Defendant notified Plaintiff that it had already sold the vehicle. Id. ¶ 18. Defendant provided Plaintiff with a used "loaner" vehicle to use while it "worked on solving" the sale of Plaintiff's 2014 vehicle. Id. ¶ 23. On October 22, 2018, Plaintiff was involved in a minor car accident while driving the loaner vehicle. Id. ¶ 28. Virginia State Police responded to the accident, ran the license plate of the loaner vehicle and advised Plaintiff that Defendant had reported the loaner vehicle as stolen. Id. ¶ 29. Police then handcuffed Plaintiff and placed him in the back of a police vehicle while police investigated whether the loaner vehicle was in fact stolen. Id. First, Defendant's finance manager, Brandon Jackson, acknowledged what had happened and advised police that Defendant did not wish to press charges. Id. ¶ 30. Subsequently, Defendant's Director of Finance, John Mason, told police that Plaintiff was working with a former employee of Defendant in a scheme to illegally obtain the loaner car. Id. Ultimately, Plaintiff was released without charges. Id. ¶ 31.

Plaintiff later returned the loaner vehicle to Defendant although he has not received his 2014 vehicle back or the 2018 truck he sought to purchase. Id. Plaintiff also contacted Port Alliance regarding the matter and was informed that, despite Defendant's representations, Port Alliance had no records of any

credit application or other communication from Defendant to it regarding Plaintiff's financing application. Id. ¶ 25.

On March 18, 2019, Plaintiff filed the Complaint in this Court. ECF No. 1. The Complaint alleges two counts: (1) Defendant violated the Truth in Lending Act by failing to comply with the disclosure requirements of 15 U.S.C. §§ 226.17 and 226.18, and (2) Defendant violated the Fair Credit Reporting Act by taking an adverse action against Plaintiff without notice as required by 15 U.S.C. § 1681(m). On May 15, 2019, Defendant filed the instant motion to compel arbitration. ECF No. 11. The motion and accompanying memorandum argue that Plaintiff is bound by the arbitration provision and may not bring the instant lawsuit. ECF No. 12. On May 29, 2019, the Plaintiff filed a response. ECF No. 15. On June 4, 2019, Defendant filed a reply, ECF No. 16, and on June 10, 2019, the parties filed a joint request for a hearing, ECF No. 17. Having been fully briefed, the pending motion is ripe for review. The Court has reviewed the parties' submissions and concludes that a hearing is not necessary. Local Civil Rule 7(J); Fed. R. Civ. P. 78.

## II. LEGAL STANDARD

The Fourth Circuit's recent opinion in Novic v. Credit One Bank, Nat'l Ass'n, 757 F. App'x 263, 265-66 (4th Cir. 2019) and this Court's opinion in Lovelady v. Five Star Quality Care-VA,

LLC, No. 4:18CV18, 2018 WL 3580768, at *7 (E.D. Va. July 25, 2018) set forth the standard for a motion to compel arbitration.

The parties' agreement, which includes the arbitration provision, is a contract. The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA") reflects Congress' intent that courts treat arbitration agreements the same as any other contract and requires federal courts to "rigorously enforce arbitration agreements according to their terms." Am. Exp. Co. v. Italian Colors Rest., 570 U.S. 228, 233 (2013). Federal policy favors arbitration of disputes, and thus "[a]greements to arbitrate are construed according to the ordinary rules of contract interpretation, as augmented by a federal policy requiring that all ambiguities be resolved in favor of arbitration." Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc., 252 F.3d 707, 710 (4th Cir. 2001) (citation omitted).

Courts must compel arbitration if the moving party proves "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure . . . to arbitrate the dispute." Adkins v. Labor Ready, Inc., 303 F.3d 496, 500-01 (4th Cir. 2002). "The party seeking to compel arbitration bears the burden of establishing the existence of an arbitration provision that

purports to cover the dispute." <u>Scales v. SSC Winston-Salem Operating, Co., LLC</u>, No. 1:17CV539, 2017 WL 4467278, at *2 (M.D.N.C. Oct. 5, 2017) (internal quotation marks and citation omitted). "If the party makes this evidentiary showing, the party opposing arbitration must come forward with sufficient facts to place the entitlement to arbitration in dispute." <u>Id.</u> (citing <u>Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc.</u>, 807 F.3d 553, 564 (4th Cir. 2015)).

As part of their agreement to arbitrate, parties may consent to arbitrate the "gateway" issue of arbitrability, essentially allowing the arbitrator to determine his or her own jurisdiction. <u>Rent-A-Ctr., W., Inc. v. Jackson</u>, 561 U.S. 63, 68-69 (2010); <u>Carson v. Giant Food, Inc.</u>, 175 F.3d 325, 329 (4th Cir. 1999). However, when the parties disagree whether they have delegated this authority to an arbitrator, that question of arbitrability must be answered by the court. <u>See AT&T Techs., Inc. v. Commc'ns Workers of Am.</u>, 475 U.S. 643, 649 (1986); <u>see also Peabody Holding Co. v. United Mine Workers of Am., Int'l Union</u>, 665 F.3d 96, 102 (4th Cir. 2012). The federal presumption generally favoring arbitration is not applicable when a court determines who the parties intended to decide issues of arbitrability. <u>Peabody</u>, 665 F.3d at 102; <u>Carson</u>, 175 F.3d at 329.

In order to overcome this general rule (that the gateway issue of arbitrability is generally decided by the Court where there is

disagreement) and place such power in an arbitrator's hands, the parties must agree, in "clear and unmistakable" language, that an arbitrator will decide which disputes the parties have agreed to arbitrate. Carson, 175 F.3d at 329 (quoting AT&T Techs., 475 U.S. at 649). The Fourth Circuit has explained that this "clear and unmistakable" standard is "exacting," and that a general agreement to arbitrate disputes arising between the parties will not suffice to establish the parties' intent concerning questions of arbitrability. Simply Wireless, Inc. v. T-Mobile US, Inc., 877 F.3d 522, 526 (4th Cir. 2017). To meet the "clear and unmistakable" standard, an agreement must contain language specifically and plainly reflecting the parties' intent to delegate disputes regarding arbitrability to an arbitrator. Peabody, 665 F.3d at 103; Carson, 175 F.3d at 330-31.

Under substantive federal law, an arbitration provision is severable from the other provisions in the parties' contract. Rent-A-Ctr., 561 U.S. at 70 (citing Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 445 (2006)). Thus, in addition to challenging whether an arbitration provision delegates power to an arbitrator to decide issues of arbitrability in "clear and unmistakable" terms, a party may oppose a motion to compel arbitration by challenging the validity of the provision. See Rent-A-Ctr., 561 U.S. at 70-71 & n.1. However, absent a challenge to the validity of such a "clear and unmistakable" delegation,

courts will not intervene in interpreting the parties' agreement. Id. Thus, when the delegation is clear and unmistakable, a party's challenge to a different contract provision, or to the contract as a whole, will not prevent a court from submitting to the arbitrator the question of arbitrability. Id. at 71-72.

Determining whether the parties' arbitration agreement is valid or whether the parties agreed to arbitrate a particular dispute, is a question of state law governing contract formation. Adkins, 303 F.3d at 501. In Virginia, "[q]uestions concerning the validity, effect, and interpretation of a contract are resolved according to the law of the state where the contract was made." Seabulk Offshore, Ltd. v. Am. Home Assur. Co., 377 F.3d 408, 419 (4th Cir. 2004). Here, the contract was made in Virginia, and thus the Court applies Virginia law.

## III. DISCUSSION

Defendant seeks to submit the entire case, including the question of whether Plaintiff's claims are arbitrable, to arbitration. This is an issue of arbitrability. That is, within the four-part framework set forth by the Fourth Circuit in Adkins discussed *supra* at 6, the parties dispute the second element: whether the dispute is covered by an arbitration provision. If Defendant meets the clear and unmistakable standard required to grant power to determine issues of arbitrability to the arbitrator, the burden shifts to Plaintiff to come forward with facts

9

demonstrating that entitlement to arbitration is in dispute for reasons such as invalidity grounded in fraudulent inducement and unconscionability. If those arguments fail, the Court must compel arbitration as the parties do not contest the existence of the remaining Adkins elements.

## A. Clear and Unmistakable

First, the Court addresses whether Defendant has met its burden of demonstrating through clear and unmistakable language that the parties delegated the power to determine issues of arbitrability to the arbitrator. The arbitration provision provides, in relevant part, that "Purchaser(s) and Dealer agree that if any Dispute (as defined below) arises, the Dispute will be resolved by binding arbitration," and goes on to define "Dispute" as "*any question as to whether something must be arbitrated*, as well as any allegation concerning a violation of state or federal statute that may be the subject of binding arbitration[.]" ECF No. 13 at 3 (emphasis added).

In Buckeye Check Cashing, the Supreme Court found that the following provision in an agreement was unmistakably clear on the gateway issue of arbitrability: "[a]ny claim, dispute, or controversy . . . arising from or relating to this Agreement . . . or the validity, enforceability, or scope of this Arbitration Provision, or the entire Agreement . . . shall be resolved . . . by binding arbitration." 546 U.S. at 442. The Fourth Circuit

found similar language in Novic unmistakably clear. 757 F. App'x at 264 ("Claims subject to arbitration include, but are not limited to, disputes relating to . . . the application, enforceability or interpretation of this Agreement, including this arbitration provision."). Like the language in Novic that was deemed clear and unmistakable on the gateway issue of arbitrability, and covered disputes involving the "application, enforceability or interpretation" of an "arbitration agreement," the arbitration provision at issue here is similarly clear and unmistakable when it defines disputes that must be arbitrated to include "any question as to whether something must be arbitrated." The terms demonstrate an intent to submit issues of arbitrability to the arbitrator. Other courts have granted motions to compel arbitration based on nearly identical language, although the plaintiffs in those cases did not argue about whether the language was clear and unmistakable. See, e.g., Graham v. Santander Consumer USA, Inc., No. CV CCB-17-3148, 2018 WL 2462881, at *3 (D. Md. June 1, 2018) ("A Dispute is any question as to whether something must be arbitrated[.]"); Taylor v. Santander Consumer USA, Inc., No. CIV.A. DKC 15-0442, 2015 WL 5178018, at *5 (D. Md. Sept. 3, 2015) (same). Therefore, the Court finds that the clear and unmistakable language in the arbitration provision at issue here delegates power to the arbitrator to decide gateway issues of arbitrability.

## B. Fraudulent Inducement

Even if the language of the arbitration provision here is clear and unmistakable on the gateway issue of who decides whether an issue is arbitrable, the Court must still decide whether the arbitration provision is valid such that the arbitrator can decide the gateway arbitrability issue. Therefore, the Court now turns to Plaintiff's two arguments that the arbitration provision is not valid.

First, Plaintiff attempts to argue that he was fraudulently induced to enter into the arbitration provision on the basis of Defendant's representations that Plaintiff had secured financing for the vehicle purchase, but the Court must determine if Plaintiff is in fact challenging the validity of the arbitration provision or the entire contract. As discussed above, if the Court rather than the arbitrator is to decide the validity of an arbitration provision, a plaintiff must have "challenged the [validity of the] delegation provision specifically, . . . leaving any challenge to the validity of the Agreement as a whole for the arbitrator." Rent-A-Ctr., 561 U.S. at 72. In this case, Plaintiff admits that the arbitration provision was part of the larger contract (the Buyer's Order), and he was fraudulently induced into entering the entirety of the contract. This is not a case where Plaintiff was fraudulently induced into entering the arbitration provision only. For instance, Plaintiff alleges in the Complaint that he was

fraudulently induced into entering the entire contract for the purchase of the vehicle. See, e.g., Compl. ¶¶ 12-13("Defendant specifically told Green that the bank that had financed his original vehicle, Port Alliance, had approved financing Green's purchase of the new vehicle. *The foregoing representation was material to the purchase of the new vehicle by Green and was relied upon by Green.* Defendant signed *multiple* documents as part of the purchase of the new vehicle.") (emphasis added). In his affidavit submitted as part of his response to the motion to compel arbitration, Plaintiff states "I only agreed to the arbitration agreement as contained in the Buyer's Order after Priority represented to me that it had already obtained credit and financing approval from two lenders . . . The arbitration agreement was presented to me in the form of a pre-printed portion of the Buyer's Order[.]"

Plaintiff is not challenging the arbitration provision specifically. Where a party argues that it was fraudulently induced into entering a contract generally as opposed to an arbitration provision specifically, courts have found that those questions are also within the province of the arbitrator. See, e.g., Buckeye Check Cashing, 546 U.S. at 445 (2005) (the Federal Arbitration Act "does not permit the federal court to consider claims of fraud in the inducement of the contract generally"); Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co., 867 F.2d

809, 813-814 (4th Cir. 1989) (reversing denial of motion to compel arbitration as claims for "fraud in the inducement of the contract generally[] is for the arbitrator").

Although Plaintiff highlights and refers to just the arbitration provision in his Complaint and memorandum, this is an attempt to avoid what is apparent — Plaintiff alleges he was fraudulently induced into entering the entirety of the contract. The validity of the contract as a whole by the clear and unmistakable language of the delegation provision has been delegated to the arbitrator, and the Court may not address that issue here.

## C. Unconscionability

In contrast, it is for the Court to decide Plaintiff's second invalidity argument because the argument that the arbitration provision itself is unconscionable is directed solely at the arbitration provision in the contract, not the contract as a whole, and such an unconscionability question is a gateway issue for the court to decide. See, e.g., Rent-A-Ctr., 561 U.S. at 73 ("But we need not consider that claim because none of [appellee's] substantive unconscionability challenges was specific to the delegation provision"); Pro Tech Indus. v. URS Corp., 377 F.3d 868, 872-73 (8th Cir. 2004) (considering argument that arbitration provision was unconscionable, but concluding that it was not); Snowden v. Checkpoint Check Cashing, 290 F.3d 631, 639 (4th Cir.

2002) (considering argument that the arbitration clause of agreement between borrower and deferred deposit check cashing lender was unconscionable because it was specific to the arbitration clause and concluding that the clause was not unconscionable).

When addressing the broader issue of unconscionability of contracts as a whole, the Fourth Circuit has explained that, under Virginia law, "[u]nconscionability is a narrow doctrine whereby the challenged contract must be one which no reasonable person would enter into, and the inequality must be so gross as to shock the conscience." Sydnor v. Conseco Fin. Servicing Corp., 252 F.3d 302, 305 (4th Cir. 2001) (internal quotation marks and citations omitted). "Unconscionability has both a substantive and procedural element." Lee v. Fairfax Cty. Sch. Bd., 621 F. App'x 761, 762-63 (4th Cir. 2015) (citing Chaplain v. Chaplain, 54 Va. App. 762, 682 S.E.2d 108, 114 (2009)). The former requires a "gross disparity in the value exchanged." Chaplain, 682 S.E.2d at 113. The latter necessitates inequity and bad faith in "the accompanying incidents . . . , such as concealments, misrepresentations, undue advantage, oppressions on the part of the one who obtains the benefit, or ignorance, weakness of mind, sickness, old age, incapacity, pecuniary necessities, and the like." Id. at 114.

Plaintiff argues that the arbitration provision meets the procedurally unconscionable element because it is a contract of adhesion, that it meets both the procedurally and substantively unconscionable elements due to lack of mutuality, and the substantively unconscionable element because it violates public policy.

The Court first addresses Plaintiff's argument that the arbitration provision is procedurally unconscionable because it is a contract of adhesion. "A contract of adhesion is a standard form contract, prepared by one party and presented to a weaker party — usually, a consumer — who has no bargaining power and little or no choice about the terms." Philyaw v. Platinum Enters., 54 Va. Cir. 364, 367 (Va. Cir.-Spotsylvania Cnty. 2001) (citing Black's Law Dictionary 318 (7th ed. 2000)). A contract of adhesion may suggest that a degree of procedural unfairness exists. See Sanchez v. Valencia Holding Co., LLC, 61 Cal. 4th 899, 915 (2015).

In the instant case, the arbitration provision Plaintiff signed appears to be a standard printed contract, the terms of which he did not negotiate. Therefore, the arbitration provision is part of a contract of adhesion and the procedural unconscionability element is likely met.

However, contracts of adhesion are not per se unconscionable merely because the first element of procedural unconscionability exists; courts also must look to the substance of the agreement.

16

For instance, in Philyaw, the Virginia court found procedural unconscionability in the contract at issue because it was a contract of adhesion. 54 Va. Cir. at 367. In addition, the court had to reach a determination of substantive unconscionability, which the court found because the arbitration provision required parties to arbitrate any disputes before an arbitrator in Los Angeles, California, although the plaintiffs were in Virginia. Id. at 366.

Therefore, the Court must also continue the inquiry and analyze the substance of the agreement. Saturn Distrib. Corp. v. Williams, 905 F.2d 719, 725 (4th Cir. 1990) (noting that "[t]he use of a standard form contract between two parties of admittedly unequal bargaining power does not invalidate an otherwise valid contractual provision" and that "[t]o be invalid, the provision at issue must be unconscionable").

With respect to the substance of the arbitration provision at issue, Plaintiff argues it is substantively unconscionable because it lacks mutuality. Specifically, Plaintiff notes the contract provides that:

> A Dispute is . . . any allegation concerning a violation of state or federal statute that may be the subject of binding arbitration, any purely monetary claim greater than $1,000.00 in the aggregate whether contract, tort, or other, arising from the negotiation of and terms of the Buyer's Order, any service contract or insurance product or any retail installment sale contract or lease[.]

ECF No. 13 at 3. However, the definition of "Dispute" excludes any "failure to provide consideration to be paid by [Plaintiff] . . . as well as [Defendant's] right to retake possession of the vehicle pursuant to this Buyer's Order." Id. Practically, it appears any potential claim over $1,000 that Plaintiff may have arising out of the contract is subject to arbitration while potential claims that the Defendant may have for non-payment shall not be considered a dispute and is not subject to arbitration.

In Sanders v. Certified Car Ctr., Inc., 93 Va. Cir. 404, 2016 WL 9076185 (Va. Cir.-Fairfax City 2016), the court found that a nearly identical provision was not unconscionable. In that case, "[e]ach party ha[d] a carve-out [from the arbitration provision] which permits the party to bring a case to court. For the Defendants (Dealer), they may proceed to court 'in the event the Buyer fails to pay any sums due the Dealer . . . .' The Plaintiff (Buyer) may bring to court claims of less than $1,000 against the Defendant." Id. at *3. The court looked at other terms of the arbitration provision and found that while the obligations of the parties were not identical, it was not so one-sided as to be unconscionable. Id. Unlike arbitration provisions in other contracts found to be unconscionable by courts, see. e.g., Philyaw, 54 Va. Cir. at 366, arbitration took place in the federal district where plaintiff purchased the vehicle. Equally reasonable, the agreement also stated that both parties will be bound by the

arbitrator's decision, and will share the cost of the arbitrator unless the arbitrator orders otherwise. _Sanders_, 93 Va. Cir. 404, 2016 WL 9076185 at *3. The _Sanders_ court concluded that "[t]he fact that each party has a different carve-out from the arbitration requirement does not mean the arbitration agreement is wholly in favor of one party over the other and thus substantively unconscionable." _Id._ at *3.

Here, the terms of the arbitration provision on the whole do not unfairly favor one party over the other, nor do they impose an undue burden on one of the parties. The location for the arbitration is reasonable because it is the jurisdiction in which the Plaintiff purchased the vehicle from the Defendant. Moreover, nothing suggests that the Better Business Bureau cannot serve as a neutral third party, and the costs of the arbitration are apportioned by the arbitrator. Further, both parties are bound to accept the arbitrator's decision. Like in _Sanders_, the parties here could reasonably have agreed to send potential disputes by the Plaintiff in excess of $1,000 to arbitration, while other disputes could still be brought in court. _See_ _Bramow v. Toll Va, L.P._, 67 Va. Cir. 56, 59 (Va. Cir.-Loudoun Cnty. 2005) ("There is no rule of which I am aware that requires all parties to a contract to have available all the same remedies. Parties are free to negotiate for different remedies for different types of breaches or for different parties."); _accord_ _Morgan v. Advance Am._, No.

4:07-3235-TLW-TER, 2008 WL 4191754, at *16 (D.S.C. Sept. 5, 2008) (under South Carolina law, having one party arbitrate its disputes and not the other was not unconscionable).

Finally, Plaintiff argues that the arbitration clause is substantively unconscionable as a matter of public policy. Plaintiff argues that the arbitration clause names the Better Business Bureau's Norfolk office as the alternative dispute resolution agency, and that the Better Business Bureau's rules state that "unless otherwise provided by agreement of the parties, the arbitrator is not bound to apply legal principles in reaching what the arbitrator considers to be a fair resolution of the dispute." Plaintiff also notes that the Buyer's Order provides that the arbitrator shall apply the substantive law of the Commonwealth of Virginia. Thus, Plaintiff argues, the arbitration provision is unconscionable because it waives his federal claims.

As a general matter, federal and Virginia courts have long held that public policy favors freedom of contract. Smithy Braedon Co. v. Hadid, 825 F.2d 787, 790 (4th Cir. 1987) (applying Virginia law in part). Under federal law and Virginia law, enforcement of valid agreements to arbitrate are viewed favorably. Va. Code Ann. § 8.01-581.01 ("a written contract to submit to arbitration ... is valid, irrevocable, and enforceable."); see also TM Delmarva Power, L.L.C. v. NCP of Virginia, L.L.C., 263 Va. 116, 122-23 (2002) (finding an arbitration clause to be enforceable and

recognizing that the public policy of Virginia favors arbitration); Devnew v. Flagship Grp., Ltd., 75 Va. Cir. 436 (Va. Cir.-Norfolk City 2006).

It is true that arbitration agreements that operate "as a prospective waiver of a party's right to pursue statutory remedies" are not enforceable because they are in violation of public policy. See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 637 n.19 (1985). However, it appears that the arbitrator in this case is in fact required to apply federal law as well as local Virginia law. Courts have found that choice of law provisions that refer to the laws of one state necessarily include federal law as well. See, e.g., World Fuel Services Trading, DMCC v. Hebei Prince Shipping Co., Ltd., 783 F.3d 507, 521 (4th Cir. 2015) ("Florida law must be deemed to include United States law[.]").

In the instant case, the Buyer's Order states the substantive law of the Commonwealth of Virginia shall apply. Because the arbitrator is bound by Virginia law, which necessarily includes federal law, nothing precludes the arbitrator from considering potential violations of federal law. This distinguishes the instant case from cases where an arbitration provision operates as a "prospective waiver of a party's right to pursue statutory remedies . . . prevent[ing] a litigant from vindicating federal substantive statutory rights." Dillon v. BMO Harris Bank, N.A.,

856 F.3d 330, 334 (4th Cir. 2017); Hayes v. Delbert Servs. Corp., 811 F.3d 666, 675 (4th Cir. 2016) (finding arbitration provision unenforceable as it "flatly and categorically renounce[s] the authority of the federal statutes to which it is and must remain subject."). In those cases, the parties affirmatively waived all recourse available to them under federal law.[2]

Therefore, even if the arbitration provision was part of a contract of adhesion, the substance of the provision is not one-sided or violative of public policy. Accordingly, the Court finds that the arbitration provision is not unconscionable.

## IV. CONCLUSION

For the reasons stated above, the motion to compel arbitration is **GRANTED**. ECF No. 11. Although the case may be stayed pending arbitration, since the Court has found that Plaintiff agreed to arbitrate the claims as well as issues about arbitrability, serious questions exist about whether the Complaint was ever properly before the Court. Thus, the Court exercises its discretion to **DISMISS THE CASE WITHOUT PREJUDICE**. See, e.g., Quality Plus Servs. v. AGY Aiken LLC, No. 3:16cv727, 2017 U.S. Dist. LEXIS 88467, *14 (E.D. Va. June 7, 2017).

---

[2] The Court notes that the prospective waiver issue would not become ripe for final determination until the federal court is asked to enforce the arbitrator's decision because a court would not be able to determine whether the arbitrator in fact applied federal law, which would render the issue moot. Dillon, 856 F.3d at 334 (citing Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer, 515 U.S. 528, 540 (1995)).

The Clerk is **REQUESTED** to send a copy of this Opinion and Order to all counsel of record.

**IT IS SO ORDERED.**

/s/ ~~MSD~~

Mark S. Davis
CHIEF UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
August __7__, 2019